# Minchener *v.* Carroll, Treasurer, &c.

## *Petition for Mandamus.*

1. *Mandamus; what necessary to authorize issuance of writ.*—In order to entitle a party to a writ of *mandamus*, it is essential that the relator have a clear and legal right to the thing demanded, and it must be the imperative duty of the respondent to perform the act required.

2. *Mandamus; when not issued to treasurer of insurance company.* In a petition for a writ of *mandamus* against the treasurer of a fire insurance company, chartered under the laws of this State, it was made to appear that the insurance company issued the policy of fire insurance to the petitioner upon which there was a loss; that the petitioner recovered a judgment against it upon which execution was issued and returned "no property found;" that the petitioner had made demand upon the company and its treasurer to pay his claim, which was refused; that the corporation had ceased to do business, but that at the time it ceased to do business it had a reserve fund, which was created as authorized by its' charter by setting aside a certain part of the premiums and assessments, which fund was to be invested in bonds, etc., as the board of directors might determine; that no part of this fund was to be used for any purpose except in settlement of claims against the corporation, and for that purpose only after the other assets, premiums and assessments had been first exhausted. It was further averred in the petition that the company had no other fund with which to pay said judgment of petitioner, and that said fund had never been invested for bonds, etc., and has not been paid out in settlement of claims against the company, but that it was still in the hands of the respondent as the company's treasurer, unless it has been expended in a way not authorized by the charter of the company. *Held:* That the petitioner was not entitled to the writ of *mandamus* prayed for. because it was not averred in the petition with any degree of definiteness cr certainty, that any portion of the reserve fund was in the hands of the respondent when the petition was filed.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The Alabama Mutual Fire Insurance Company was incorporated under and by a special act of the Legislature of Alabama, approved by the Governor on the 23d day of January, 1895, and was authorized to do a general fire insurance business. Acts, 1894-95, p. 269.

The company was authorized by its charter to set aside one-eighth of all premiums and assessments received by it as a reserve fund to be invested in such bonds, notes, mortgages, personal property or real estate as the board of directors might determine; and the charter provided that no part of the principal should be used for any purpose except in settlement of claims against the corporation, the other assets, premiums and assessments having been first exhausted.

Said company immediately engaged in the business of writing fire insurance, and on the 24th day of November, 1896, issued to Jos. Minchener, Sr., a fire insurance policy on certain property, for the amount of $400, insuring it against loss by fire for three years from the date of the policy, and collected from him the premium thereon. On the 15th day of February, 1899, while said policy was in force, said insured property was destroyed by fire, and the company was duly notified of the loss, but failed and refused to pay the same as it had agreed to do under the terms of the policy, whereupon Jos. Minchener, Sr., brought suit on the policy against th~ company, and on the 24th day of July, 1900, recovered a judgment for $440.79 damages, and $25.70 costs of the suit, on which judgment an execution was regularly issued and returned "no property found," and said judgment is still in force and is unpaid.

At the time said company engaged in the business of writing fire insurance, and during the time it was so engaged in said business, it set apart one-eighth of the premiums and assessments collected by it as a reserve fund, as provided in its charter; and said reserve fund was in force and existence at the time of the issuance of the policy to Jos. Minchener, Sr., and at the time his

[Minchener v. Carroll, Treasurer, etc.]

loss was sustained thereunder, and amounted to about $3,000, but was never invested in bonds, notes, or other property, but remained in cash in the hands of its treasurer. J. S. Carroll was and is the treasurer of said company, and was and is the custodian of this fund, and likewise of all other moneys belonging to the company. Said reserve fund has not been paid out in settlement of claims against the company, but is still in the hands of said treasurer, unless it has been paid out in a way not authorized by law. Said company has no other funds out of which to pay the judgment herein referred to, and has failed and refused to pay the same on demand. Said reserve fund has been established and was in full force and effect at the time of the issuance of said policy to Jos. Minchener, Sr., and at the time he sustained the loss thereunder.

Demand was made on the board of directors for the payment of said judgment, and they failed and refused to pay it; then demand was made on J. S. Carroll, as treasurer of said company, to pay said judgment out of said reserve fund, and he failed and refused to pay it. After the loss herein complained of, and after suit was brought for its recovery, said company ceased to do business under its charter, at which time its reserve fund amounted to about $3,000.

Upon the failure and refusal to pay said judgment by the board of control and the treasurer, Jos. Minchener, Sr. applied to John P. Hubbard, judge of the 12th judicial circuit, for a writ of *mandamus,* or other remedial writ, directed to J. S. Carroll, as treasurer of said company, to compel him to pay said judgment out of said reserve fund. The rule *nisi* was issued, and at the Spring Term, 1902, of the circuit court of Pike county, Alabama, J. S. Carroll, as such treasurer, appeared in said cause, and demurred to said petition, which demurrer was sustained, and the petition dismissed. From this judgment Jos. Minchener, Sr. now prosecutes this appeal, and assigns the rendition thereof as error.

E. R. Brannen, for appellant, cited *Weatherly v. Water Co.,* 115 Ala. 175; *Somerville v. Wood,* 115 Ala.

534; *Reynolds v. Taylor*, 43 Ala. 420; *Wyker v. Francis*, 120 Ala. 520; *Sessions v. Boykin*, 78 Ala. 328; *Winter v. Baldwin*, 89 Ala. 486; Wood on Mandamus, pp. 23, 29-30; Moses on Mandamus, 199; *People v. Throop*, 12 Wend. 183; *People v. Onderdonk*, 1 How. (N. Y.), 247; Angell & Ames on Corp. (11th ed.), § 707.

FOSTER, SAMFORD & CARROLL, *contra*, cited 1 Mayfield's Digest, 613; 17 Amer. & Eng. Ency. of Law, 132; 14 *Ib*. 182, 184.

TYSON, J.—This is an application for a writ of *mandamus* against one Carroll as treasurer of the Alabama Mutual Fire Insurance Company, a corporation chartered under the laws of this State. The purpose of the writ is to compel the treasurer to pay a judgment which the petitioner has against the corporation. It is made to appear by the averments of the petition, that the corporation is an insurance company and issued a policy of insurance to the petitioner upon which there was a loss. That petitioner recovered a judgment against it, upon which execution was issued and returned *nulla bona*. That he has made demand upon the corporation and its treasurer to pay his claim, which has been refused. That the corporation has ceased to do business and is not now engaged in the business for which it was organized and that at the time it ceased to do business its reserve fund amounted to $3,000. That the company has no other fund with which to pay said judgment. This reserve fund, it is averred, was created as authorized by the charter by the corporation settting aside one-eighth of all premiums and assessments received by it as a reserve fund to be invested in such bonds, notes, mortgages, personal property or real estate as the board of directors may determine. No part of it, however, could be used for any purpose except in settlement of claims against the corporation, and for that purpose only after the other assets, premiums and assessments, have been first exhausted.

It is further averred that this fund has never been

invested in bonds, securities or other property, and that it was placed by the corporation in the hands of the respondent, as its treasurer, and has not been paid out in settlement of claims against the company, but it is still in his hands, unless it has been expended in a way not authorized by the charter.

The foregoing are the substantial averments of the petition. It is entirely clear that the charter imposes no duty upon the corporation to appropriate this fund to the payment of petitioner's claim. The conditions imposed by the charter by which it shall be applied to the payment of claims against the company are not shown to exist. No exhaustion of the other assets, premiums and assessments is averred. For aught appearing, the corporation may have more than sufficient assets, other than funds in its treasury, or premiums and assessments due to it to pay all of its liabilities.

The averments that the corporation has ceased to do business and that it has no other fund with which to pay the petitioner's claim is not an averment that it has no other assets, or that it has no premiums due to it on policies issued by it, or that it has exhausted its right to levy assessments for the purpose of paying its liabilities. As to whether it has such assets, we are not informed and indeed cannot be without the fact being shown by proper averment. We cannot presume their existence without doing violence to the plainest rules of pleading. In other words, we cannot intend or presume the existence of a material fact necessary to be averred. Thus we see that the facts averred impose no specific duty upon the corporation under its charter to apply this money, if it has it, to the satisfaction of petitioner's claim.

It is practically a universal rule, in order to entitle a party to the writ of *mandamus* he must show that he has a clear legal right to demand the performance of a specific duty. In other words, it is essential that the relator have a clear legal right to the thing demanded and it must be the imperative duty of the respondent to perform the act required.—19 Am. & Eng. Ency. Law, (2d ed.), p. 725 and note 4.

Furthermore, it is not averred with any degree of definiteness or certainty that any portion of this reserve fund was in the hands of the company's treasurer when this petition was filed. The averment is that he has it, unless it has been expended in a way not authorized by the charter of the corporation. *Mandamus* is not the proper remedy in cases of misappropriation.—14 Am. & Eng. Ency. Law (1st ed.), 184.

Thus far we have treated of the petitioner's rights, upon the facts, to compel the corporation to pay to him his claim out of the fund sought to be subjected. We will now show that he has no such right to compel the respondent, its treasurer, to do so. The fact that petitioner has failed to show a clear legal right to the fund is just as effective to defeat his right to the writ against the respondent, as it would be, had he sought the writ against the corporation. Besides the respondent, as treasurer, cannot control the business of the corporation and has no authority to pay its debts, except by order of its directors. He has no authority to apply this fund, in the absence of directions from the board of directors, unless the charter authorizes him to do so, to the payment of this debt. Ordinarily it is his duty merely to receive, safely keep and disburse under the supervision of the directors the funds of the company. 17 Am. & Eng. Ency. of Law (1st ed.), 132. If the charter imposes the specific duty upon the respondent as treasurer of applying any portion of this fund to payment of petitioner's debt, it is not shown by the averments of the petition. And in the absence of such a showing, we cannot presume its existence.

The other members of the court concur in an affirmance upon the sole ground that it is not averred with any degree of definiteness or certainty that any portion of the reserve fund was in the hands of the respondent when the petition was filed.

Affirmed.