# Commissioners Court Tuscaloosa Co. *v.* State, *ex rel.* City of Tuscaloosa.

## *Mandamus.*

(Decided February 11, 1913.　Rehearing denied March 18, 1913.
61 South. 431.)

1. *Highways; Road Tax; Distribution; Payment to City.*—Acts 1909, p. 304, is not repugnant to section 216, Constitution 1901, and applies to funds levied and set apart for roads and bridges; the Commissioners Court should separate the road and bridge fund from the amount set apart to public buildings, and should separate the funds derived from the general tax from that derived from a special tax under section 215, Constitution 1901. If the Commissioners Court has transferred to the County Road and Bridge fund the part that should have been paid over to the municipality, it can correct such error, as the fund is not beyond its control.

2. *Same.*—Under Acts 1909, p. 304, the Commissioners Court has control of the fund derived from such tax, notwithstanding it has placed the proceeds in the roads and bridge fund, its control not having been impaired by Acts 1903, p. 437, and until the warrants authorized by such act are drawn, the Commissioners Court has authority to transfer to the municipality its part of such fund.

[Com'rs Court of Tuscaloosa Co. v. State, ex rel. City of Tuscaloosa.]

3. *Mandamus; Road Fund; Controlling Action of Commissioners Court.*—Where the Commissioners Court fails or refuses to pay over to the city its proportionate. part of the road and bridge fund arising from taxes collected within the municipality, mandamus will lie to compel it to do so.

4. *Judgment; Res Judicata; Successive Proceedings.*—A judgment denying a writ of mandamus to compel the Commissioners to pay over to a city a part of the proceeds of a special road tax, is not res judicata of a proceeding to compel the Commissioners Court to pay over to the city a portion of a general tax appropriated to the Road and Bridge Fund; the rule being that where a second action between the same parties is upon a different claim the judgment in the prior action operates as an estoppel only as to matters in issue or points controverted, upon the determination of which the verdict or finding was rendered.

5. *Interest; Distribution of Tax; Allowance.*—Interest should not be allowed on the portion of the road tax belonging to a municipality from the assessment of property within its confines, in an action by the city against the Commissioners Court to compel payment of such tax.

(McClellan, J., dissents.)

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Mandamus by the State of Alabama on the relation of the city of Tuscaloosa against the Commissioners Court of Tuscaloosa county, to require them to pay over to the Board of Commissioners of the city that sum of money which is due the city from the general road and bridge tax collected by the county from the property within the municipality. From a judgment granting the mandamus respondents appeal. Corrected and affirmed.

OLIVER, VERNER & RICE, for appellant. The Act of 1909, under which the city is claiming the fund is violative of section 216, Constitution 1901.—*So. Ry. v. State,* 115 Ala. 250, and authorities there cited; *Taylor v. State,* 131 Ala. 39. The act creating the Board of Public Works takes the jurisdiction of this fund out of the hands of the Court of County Commissioners.— Local Acts 1903, p. 433; Local Acts 1907, p. 222. It

[Com'rs Court of Tuscaloosa Co. v. State, ex rel. City of Tuscaloosa.]

follows, therefore, that after it was transferred by the Commissioners Court to the Board of Public Works, that court had no further jurisdiction of it, and could not possibly perform the order if required to do so.— *Ex parte Shandies,* 66 Ala. 136; High's Ex. Leg. Rem., sec. 14. Mandamus is not the proper remedy, as assumpsit would lie.—*Jefferson County v. B'ham W. W. Co.,* 160 Ala. 152; *Commissioners Court v. State,* 146 Ala. 439; *Scarborough v. Watson,* 140 Ala. 351; *Ellis v. Jefferson County,* 55 South. 179; *Paris v. Miller,* 145 Ala. 494. The former proceedings was res judicata, and the plea to that effect should have been sustained. —*S. & N. Ala. R. R. Co. v. Henlein,* 56 Ala. 374; *Tankersly v. Pettis,* 71 Ala. 187; *Glasser v. Meyrovitz,* 119 Ala. 52; *Wood v. Wood,* 134 Ala. 565.

E. L. CLARKSON, J. MANLEY FOSTER, and J. E. MORRISETTE, for appellee. The Act of August 26, 1909, (Acts Special Session, 1909, page 303), is constitutional.— *Board of Revenue v. Birmingham,* 54 South. 757; *Commissioners' Court of Calhoun Co. v. Anniston,* 58 South. 252; *Keene vs. Jefferson Co.,* 135 Ala. 465; *Southern Ry. v. St. Clair Co.,* 124 Ala. 491; Elliott on Roads and Streets, Second Edition, sections 421, 423, 426; *Mobile & Montgomery Ry. Co. v. Ala. Midland Ry. Co.,* 116 Ala. 51. Mandamus is a remedy to which the city had a right to resort. (a) It makes no difference that there may be another remedy.—*Wyker v. Francis,* 120 Ala. 509; *Norwood v. Goldsmith,* 168 Ala. 224; *Board of Revenue v. Birmingham,* 54 South. 757; *Commissioners Court of Calhoun Co. v. Anniston,* 58 South. 252. There is, under the facts of this case, no obstacle to obedience to the order by the Court of Commissioners.—*Somerville v. Wood,* 115 Ala. 534; *Johnson v. Sacramento Co.,* 65 Cal. 481; *People v. New York,* 77 N. Y. 45; 4 Words

16—180

& Phrases, sub-title "Bridges," p. 3294; *State v. Street,* 117 Ala. 203.   The demand for $1,406.00 claimed to be due to the city of Tuscaloosa out of the general fund devoted to roads and bridges for the year 1909 is not res judicata.—*Crowder v. Red Mt. Mining Co.,* 127 Ala. 254; *Moore v. Johnston,* 108 Ala. 324; *Strauss v. Meertief,* 64 Ala. 292; *Cromwell v. Sacramento Co.,* 94 U. S. 351.   The court properly overruled respondents' several objections to portions of the agreed statement of facts. —38 Cyc. 1934; *Johnson v. Linton,* 163 Ala. 547; *Garner v. Freeman,* 42 South. 768; *Bixler v. Kunkel,* 17 S. & R. (Pa.) 310; *Swatara R. R. Co. v. Brune,* 6 Gill. (Md.) 41.

ANDERSON, J.—In the case of *Board of Revenue of Jefferson County v. City of Birmingham,* 172 Ala. 139, 54 South. 759, the original opinion dealt with the "one-fourth of one per centum" tax provided for in subdivision "a" of section 215 of the Constitution of 1901 for public buildings, bridges, or roads, and which provides that this tax, when levied and collected, shall be applied exclusively to the purposes for which the same were so levied and collected.   It was there held that this tax or any part thereof could not be turned over to municipalities for the improvement of streets, for the reason that the framers of our organic law did not intend to include city streets within the meaning of the word "roads," as used with reference to the one-fourth of 1 per centum tax as provided by subdivision "a" of section 215 of the Constitution.   This construction, as to said special one-fourth of 1 per centum tax, was reaffirmed in the case of *Pike County v. City of Troy,* 173 Ala. 442, 56 South. 131, 274.   In the Jefferson County case, supra, upon rehearing a majority of the court determined that the case did not involve the special tax

of one-fourth of 1 per centum, but related to a part of a road tax levied under the general power of taxation, not to exceed one-half of 1 per centum, as mentioned in the first part of section 215 of the Constitution, and that Acts 1909, p. 304, which requires the commissioners' court or board of revenue to pay over to the municipality one-half of the road tax as is derived from the assessment of property within the municipality, was not unconstitutional, in so far as it related to a road tax levied and collected under the general power of taxation, as dintinguished from the road, building, and bridge tax authorized by subdivision "a" of said section 215. This last opinion was reaffirmed in the case of *Commissioners' Court of Calhoun County v. Anniston,* 176 Ala. 605, 58 South. 252. As heretofore held, the act was not violative of section 215 of the Constitution, in so far as it deals with the road tax derived under a general levy as distinguished from the special tax of one-fourth of 1 per centum, and it was not then suggested, upon the consideration of either of the above cases, that said act was repugnant to any other constitutional provision, and it is neither the policy or custom of courts to wander into the field of speculation in order to gratuitously strike down a legislative enactment on some point not made or suggested in the brief or argument of counsel.

It is suggested, however, upon this appeal that the act is repugnant to section 216 of the Constitution of 1901 (section 7, Constitution of 1875), which prohibits the levy and collection of over one-half of 1 per centum of the value of property by a municipality, and in support of the suggestion or insistence we are cited to the case of *State v. Southern Ry.,* 115 Ala. 250, 22 South. 589. This case has no bearing upon the present question, for there the act considered expressly increased

the rate of taxation on property within the municipality above the constitutional limit, notwithstanding it was levied and collected by the state or county authorities. It was a tax on municipal property for municipal schools, and was not an appropriation of a part of a county fund legally levied and collected to the municipality. Here there is no additional burden of taxation put upon the property owners of the municipality, and the tax rate is in no sense increased, as the act creates a benefit instead of a burden on the city taxpayer. It simply, with the ends of justice and equity in view, requires the transfer of a certain portion of a fund legally collected, to the source from which it was derived, instead of expending all of said fund upon the highways outside of the municipalities.

It appears that the order appropriating the fund in question purports to have been made under the act of 1903 (Laws 1903, p. 433), instead of the act of 1907 (Local Acts 1907, p. 227), and which amended or repealed said act of 1903; yet it appears that the fund was transferred to the "Road and Bridge Fund" of Tuscaloosa county, and one-half thereof, as was raised under the general tax on property within the city of Tuscaloosa, either by a levy for road purposes or afterwards set apart for said purpose, should have been turned over to the city, instead of to the road and bridge fund. It may be true that the local act includes public buildings with roads and bridges, and that the general act of 1909 does not apply to funds levied or set apart for public buildings, but it does apply to funds set apart for roads and bridges, as bridges are but a part of the roads, and the commissioners' court, in order to comply with the general act of 1909, should designate the appropriation by separating the road and bridge fund from the amount set apart for public build-

ings, and should also separate the fund derived from the general tax from that derived as a special tax under subdivision "a" of section 215 of the Constitution. It seems, however, that the fund in question—that is, which is being sought—was a part of the general tax, and was set apart for roads and bridges, not public buildings, and, instead of appropriating all of it to the road and bridge fund, a portion should have been turned over to the city of Tuscaloosa.

In other words, it appears that the road and bridge fund of the county has received funds which should have been turned over to the city, and there is no reason why the commissioners' court cannot correct an error which it has made, as the fund is not beyond its control and it has the power to place the fund where it belongs, and, failing to do so, the writ of mandamus is an appropriate remedy to compel action. We do not understand from the local act of 1907 that the commissioners' court lost all control over this fund after the appropriation to the road and bridge fund; for, while the said act provides for a board of public works, it does not make the said board the disbursing authority of the fund, and does not divest the commissioners' court of the control of same; therefore, so long as the treasurer has in hand, as a part of the road and bridge fund, funds which should be turned over to the city of Tuscaloosa, we see no good reason why the commissioners' court cannot comply with the act of 1909, or be compelled to do so in case of a refusal on their part. This writ in question seeks a warrant from the commissioners' court on a special fund appropriated and set apart for a certain purpose, and mandamus is the proper remedy to compel the issuance of same. The relator is not seeking payment out of the general fund or such a payment as he could recover in law in an action against the com-

missioners.—*Wyker v. Francis,* 120 Ala. 509, 24 South. 895; *Mobile v. Stone,* 69 Ala. 206.

We do not think that the judgment in the former proceeding is res judicata. The former mandamus sought the payment of a certain part of the one-fourth of one per centum of the special tax only, and did not include the tax in question. They are entirely separate and distinct demands having no legitimate relationship with each other, and one being governed by the act of 1909, but which has no application to the other, or which could not do so under the last part of section 215 of the Constitution. The distinction as to when a former judgment does and does not operate as a bar or estoppel against a second action is so well made in the case of *Cromwell v. Sac County,* 94 U. S. 351, 24 L. Ed. 195, that we quote the headnote in said case, notwithstanding it was heretofore quoted and followed in the case of *Crowder v. Mining Co.,* 127 Ala. 254, 29 South. 847: "The difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand and its effect as an estoppel in another action between the same parties upon a different claim or cause of action is that in the former case the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. But, where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as. to those matters in issue or points controverted upon the determination

[Com'rs Court of Tuscaloosa Co. v. State, ex rel. City of Tuscaloosa.]

of which the finding or verdict was rendered.' See *Cromwell v. County of Sac*, 94 U. S. 351 [24 L. Ed. 195]; *Nesbitt v. Riverside Independent Dist.*, 144 U. S. 610 [12 Sup. Ct. 746, 36 L. Ed. 561]; *Davis v. Brown*, 94 U. S. 423 [24 L. Ed. 204]; *Jacobson v. Miller*, 41 Mich. 90, 1 N. W. 1013; Freeman on Judgments (4th Ed.) § 253, p. 453, and section 330, p. 603; 1 Van Fleet's Former Adjudication, § 219, pp. 523-525."

This is an action to have set aside or transferred to the relator its portion of a certain specific fund, and is not an action of assumpsit, and we do not know upon what theory the trial court allowed interest. The case of *Caldwell v. Dunklin*, 65 Ala. 461, was a summary proceeding under a statute which made the treasurer liable for a penalty of 10 per cent. and interest, for failing to pay claims when he had funds in hand. There the statute expressly provided for interest from the time of the demand. We think that the trial court incorrectly required that interest should be included in the orders or warrants to be made or drawn by the commissioners' court, and the judgment in this respect is corrected by striking out the interest, but in all other respects is affirmed.

Corrected and affirmed.

Dowdell, C. J., and Mayfield, Sayre, and de Graffenried, JJ., concur. McClellan, J., dissents. Somerville, J., not sitting.

UPON REHEARING.

ANDERSON, J.—In the preparation and consideration of the foregoing opinion, we considered only the local act of 1907, as it repealed and superseded the act of 1903 (page 433). It is now suggested that there is

another act of 1903 (page 437), which was not repealed by the act of 1907, and that said act gives the chairman of the board of public works the authority to draw warrants on the road and bridge fund, and therefore necessarily excludes the commissioners' court from any further control over same after once set apart to said fund. This act merely authorizes the chairman of the board of public works to draw warrants for certain purposes, and does not preclude the commissioners' court from correcting any errors it may have made in providing the fund to be drawn upon by the board of public works. It would be a narrow construction to hold that the commissioners' court, charged with the creation of the road and bridge fund, or the separation thereof from other funds, are tied hard and fast from correcting its errors, and from doing what is right in law and morals, simply because it had illegally included the city's money in the amount set apart to the road and bridge fund. If the city's part of the tax fund had been illegally passed into the road and bridge fund, it is not only the right, but the duty of the commissioners' court to correct the mistake. Of course, after the identical money has been spent by the board of public works, a retransfer of same is impossible, but one dollar to the city is worth as much as another, and, if the road fund has gotten funds that belonged to the city and spent same, there is no reason why the city should not be reimbursed with any other money belonging to said road and bridge fund. In other words, it appears that the road fund has received and used funds which should have been turned over to the city. Yet there is now in said fund more than enough to reimburse the city, and we think that the commissioners' court has the authority to withdraw from said fund the sums improperly appropriated to same, or to deduct it from future appro-

priations, in case there is not a sufficient sum on hand to reimburse the city. Indeed, the agreement as to the facts shows that the $20,000 set apart for the year 1912 was so set apart upon the condition that so much thereof as would be necessary to reimburse the city should be refunded, in case this claim was decided in favor of the city. It also appears from paragraph 8 of the agreement that $12,317.62 was on hand when this petition for mandamus was filed.

The other questions argued upon rehearing are discussed in the original opinion, and we think have been properly decided. The application for rehearing is overruled.

